IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

THE ESTATE OF MICHAEL DAVENPORT,
DECEASED By and through Clottee Knight, Administrator     PLAINTIFF

V.     CASE NO. 4:07CV76

MISSISSIPPI DEPARTMENT OF CORRECTIONS
CHRISTOPHER EPPS
**LAWRENCE KELLY**, In his official capacity
**BILLY BURCHFIELD, In his individual capacity**
**HERMAN WESLEY KNIGHT, In his individual
and official capacities,**
PARCHMAN VOLUNTEER FIRE DEPARTMENT     DEFENDANTS

## MEMORANDUM OPINION

This cause comes before the court on the motion [53] of the defendants, Parchman Volunteer Fire Department ("PVFD"), Lawrence Kelly in his official capacity, Wesley Knight in his individual and official capacities, and Billy Burchfield in his individual capacity, to dismiss or in the alternative for summary judgment.

The plaintiff, The Estate of Michael Davenport ("Davenport"), sued the defendants[1] alleging violations of his Eighth Amendment rights. Davenport was an inmate at all pertinent times. On October 3, 2003, he was assigned to work as a firefighter for the PVFD. On March 9, 2006, Davenport died while fighting a fire. The firefighters on the scene that night included Knight, Burchfield, Dudley Chandler, Gary Lambert, Robert Grays, and Davenport. Knight became the chief of the PVFD in 1999. Burchfield is a PVFD captain. Chandler is a member of the PVFD staff. Lambert and Grays are inmate firefighters.

---

[1] Davenport voluntarily dismissed PVFD and Kelly from this suit after this motion was filed. The Mississippi Department of Corrections and Christopher Epps were dismissed before the instant motion was filed.

After arriving at the fire, Davenport and one or two other firefighters lead by Burchfield entered the structure. Chief Knight arrived on the scene as those firefighters entered the building. He then proceeded to enter the structure himself. Burchfield exited the building once Knight arrived. At some point, Knight, Davenport and another firefighter made their way to the second floor of the burning home. At this point, Davenport and others broke through a wall to determine the source of the fire. The heat became too intense for the firefighters to remain in the building. Knight ordered the firefighters to exit. Davenport succumbed to the heat, smoke, or fire and died. All the other firefighters exited safely.

Although a portion of this motion is styled as a motion to dismiss, the defendants rely on facts outside the pleadings. The court will thus consider the entire motion as one seeking summary judgment. *Carter v. Stanton*, 405 U.S. 669, 671 (1972). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151, 120 S.Ct. at 2110.

Wesley Knight first claims he is entitled to Eleventh Amendment immunity. State

officials are subject to suits seeking prospective injunctive relief. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). However, the Eleventh Amendment bars suits for monetary damages against state officials in their official capacity.[2] *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 609 n.10 (2001) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)). Monetary claims are cognizable against municipalities and other governmental entities that are less than states. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978). Davenport seeks only damages in this suit.

Davenport assumes Knight is an official of a lesser governmental entity. Knight assumes he is a state official. Neither party briefs this issue. However, the Fifth Circuit has addressed the issue of whether Parchman officials are state officials. In *Bogard v. Cook*, the Fifth Circuit found Parchman to be an arm of the state and its officials to be protected by Eleventh Amendment immunity. 586 F.2d 399, 410 (5th Cir. 1978). There are no facts argued that would show the PVFD should be viewed differently from the prison itself.

Davenport's claim against Knight in his official capacity is barred by the Eleventh Amendment.

Knight and Burchfield next argue qualified immunity protects them from suit in their individual capacities. The privilege of qualified immunity shields a government official from civil liability for damages based upon the performance of discretionary functions if a reasonable official would not have known those acts violated clearly established constitutional or statutory law. *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006). The privilege is immunity from suit rather than a mere defense to liability, and as such the Supreme Court has "repeatedly . . .

---

[2] Billy Burchfield was not sued in his official capacity.

stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The test to determine if qualified immunity exist is "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, (2) if so, whether the defendant's conduct was objectively unreasonable in the light of . . . clearly established law at the time of the incident."[3] *Hare v. City of Corinth, Mississippi* (*Hare VI*), 135 F.3d 320, 325 (5th Cir. 1998)[4] (citing *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997)).

In applying the qualified immunity test, the court must first determine if Davenport makes a constitutional violation claim. *Id.* (citing *White v. Taylor*, 959 F.2d 539, 545 n.4 (5th Cir. 1992)). The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). In order to prevail on such a claim an "inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

It is clear Davenport had a right to be free from incarceration conditions which result in death or serious injury. There are a number of cases dealing with this right as it applies to prison employment. *See, e.g., Bowie v. Procunier*, 808 F.2d 1142 (5th Cir. 1987) (chopping wood); *Vuncannon v. United States*, 2008 WL 4936493 (N.D. Miss. November 14, 2008) (forklift operator). The defining characteristic of those cases is that an inmate employee is only constitutionally protected from acts or omissions that are deliberately indifferent and not those

---

[3] The Supreme Court recently eliminated the requirement that the test must be applied in formulaic order. Pearson v. Callahan, 129 S.Ct. 808, 818 (2009). As discussed below the court has conflated a portion of the test.

[4] The court adopts the numbering system employed by the Fifth Circuit's *Hare* opinions.

that are negligent. *Hare VI*, 135 F.3d at 326 (citing *Hare v. City of Corinth, Mississippi* (*Hare V*), 74 F.3d 633, 650 (5th Cir. 1996)).

Deliberate indifference is a subjective standard requiring actual knowledge that an act or omission places an inmate at a substantial risk of serious harm and a disregard of "'that risk by failing to take reasonable measures to abate it.'" *Hare V*, 74 F.3d at 648 (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). The law of deliberate indifference is clearly established in this Circuit. Little case law illuminates constitutionally required actions in regard to dealing with inmate firefighters. There is, however, no rule requiring an action to have previously been held unlawful in order to violate clearly established constitutional law. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12 (1985)). Instead "'the unlawfulness [of an individual's action] must be apparent.'" *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A defendant is entitled to fair warning his conduct is prohibited, not a prior fact specific ruling holding an action unconstitutional. *Id*. at 739-40. In this case it was apparent that a prison official could not permissibly act with deliberate indifference towards an inmate firefighter.

The court addresses both the first and second prong of the qualified immunity test together for the remaining claims. The second prong requires that Knight and/or Burchfield acted objectively unreasonable in light of clearly established constitutional law. *Hare VI*, 135 F.3d at 328. The remaining alleged violations of Davenport's rights are: (1) providing him with defective equipment; (2) allowing him to enter the building; (3) not immediately ordering him to exit the building; and, (4) not instituting a two in/two out or buddy system procedure.

Davenport was a firefighter. As such he was exposed to more risks that other inmates. Neither party cites any case for the proposition inmates cannot serve as firefighters. Placing

inmates in the position of fighting fires places them directly in harm's way. However, there is no sliding scale of constitutional duties driven by the dangers associated with an activity. As such Knight and Burchfield were only required to refrain from causing harm to Davenport by deliberately indifferent acts. They had no duty to prevent Davenport from working as a firefighter. Inmates can be firefighters, but if so assigned prison officials must abate the known dangers to inmates. The question is how the officials acted after Davenport's assignment.

The plaintiff alleges defective equipment caused Davenport's death. Having subjective knowledge of sending an inmate firefighter to fight a fire with defective equipment would be a violation of the inmate's constitutional rights. The danger in such an action is obvious. Davenport, however, offers no proof anyone had actual knowledge his equipment was defective. At best the evidence shows Knight was responsible for the equipment, had examined the equipment, and negligently not replaced it. Negligence is never enough to support an inmate's claim brought under the Eighth Amendment. No proof indicates Knight knowingly sent Davenport to a fire with defective equipment. To the contrary, the evidence establishes that Knight inspected the equipment regularly and repaired or replaced the equipment as needed. Nothing rebuts this finding. Absent more proof this claim fails.

Taken in the light most favorable to Davenport, the evidence indicates there is a substantial risk of harm in entering a burning building. Davenport puts forth the proposition that this act is a failure to abate the danger associated with fighting a house fire. However, such activities are part of their normal job duties and can be safely accomplished. While the danger associated with entering a burning building may be greater than other prison occupations, the risk involved does not itself establish a constitutional violation. The specific and great hazard associated with firefighting arises typically from fighting fires in close quarters. When

Burchfield sent Davenport into this hazardous situation he took on a duty to abate that danger. He cannot be liable for leading Davenport into the building without proof of a failure to abate a known danger. No such proof has been submitted to the court.

The court now addresses a collateral issue. Much of Davenport's argument that the actions of Burchfield and Knight were unreasonable revolves around the fact he was untrained.[5] He relies on Mississippi law for the proposition that all firefighters must be trained before working at fire sites. The Mississippi legislature has found "the specialized and hazardous nature of fire fighting requires that fire fighters possess the requisite knowledge and demonstrate the ability to perform certain skills to carry out their responsibilities." MISS. CODE ANN. § 45-11-201. The legislature imposes minimum training requirements for firefighters. MISS. CODE. ANN. §§ 45-11-201; 45-11-203. Those requirements apply only to full-time firefighters. MISS. CODE ANN. § 45-11-203; *Tucker*, Op. Att'y Gen., 2006 WL 2385491 (Miss. A.G. June 26, 2006). The policy considerations are obvious. The legislature has created three classifications of firefighters: full-time, part-time and volunteers. This allows rural communities to be served by firefighters without training. The court has no doubt that the time and expense of training volunteer firefighters would be prohibitively expensive for many Mississippi volunteer fire departments. The classification system serves rural communities and protects full and part time firefighters from the hazards of their profession. Inmate firefighters do not neatly fit into one of these categories. Logic, if not the written law, dictates that they be treated as full-time firefighters. No clearly established law illuminated this point at the time of Davenport's death. As such, in 2006 no one could be liable for failing to train an inmate firefighter.

---

[5] Davenport brought a failure to train claim. However, that claim was brought only against Knight in his official capacity.

While there is no clearly established law on the point, the court finds Mississippi's inmate firefighters should have a right to substantially the same training as full time firefighters. Inmate firefighters are not truly volunteers. Inmates are required by law to work. MISS. CODE ANN § 47-5-126. Inmates working as firefighters are not assigned to these positions unless the inmate requests such an assignment. However, there is a clear distinction between a free world volunteer and an inmate 'volunteer.' Free world volunteers fight fires for the benefit of their community. Inmates are required to work and by 'volunteering' are simply choosing their occupation. Free world volunteers spend the majority of their time engaged in other activities. For inmates, firefighting is their sole responsibility. Inmates likely choose to become firefighters in order to gain some perceived privilege. Mississippi has recognized that full-time firefighters are exposed to serious dangers and training is mandated to abate that risk. Inmate firefighters should receive the same training any other full-time firefighter received.

The lack of training in this case does not create liability, but it interplays with other events of the night to inform the court's decision.[6] Trained firefighters are almost certainly entitled to less direct oversight than untrained firefighters. Threats of harm to them are greatly abated by training. The law requires a disregard of a known risk of serious harm and a failure to abate that harm in order for liability to attach. Training would in many instances be enough for prison officials to avoid suit. The knowledge of Knight and Burchfield regarding Davenport's lack of training reflects on the reasonableness of their later actions because they knew Davenport was at a greater risk than a trained firefighter and was less well equipped to protect himself.

Resolution of this case hinges on the procedures in place at the time of Davenport's

---

[6] Because inmates could constitutionally serve as firefighters without training in 2006, the court finds no value in any lack of training evidence when determining the viability of the first three claims discussed.

death.  When Davenport entered the burning building there was no "two in/two out" procedure in place.  At no time that night did Knight or Burchfield ever adopt such a system.  The two in/two out system is the modern version of the buddy system.  These standard procedures ensure all firefighters enter and leave a fire with another firefighter thus preventing anyone person from being trapped in a fire alone.[7]  Knight[8] and Burchfield were aware of this procedure.  However, Burchfield exited the building without taking Davenport with him.  This is most probably negligence on Burchfield's part.  However, leaving his crew with Knight is not deliberately indifferent.  There is no evidence to show Burchfield was aware of the danger of leaving firefighters under the command of his superior, Knight.  As such, Burchfield is entitled to qualified immunity on this claim.

Knight did not regroup the men and institute the buddy system when he arrived in the building.  Additionally, when Knight ordered the men to leave the building, he did not ensure Davenport was with him as required by the two in/two out system.  Physical contact with one's buddy while exiting is a part of the system.  Knight failed to maintain physical contact and admitted that he never looked back to see if Davenport was with him.

This failure is not objectively reasonable.  The evidence shows Knight was aware of the procedure, aware of the risk of not following the procedure, and yet did not implement the system.  The court is unaware of any prior case in which a prison official has been held liable on a factually similar claim.  However, Knight can not argue any rights he violated were not clearly established.  The Fifth Circuit has repeatedly held prison officials cannot act with deliberate

---

[7] The actual procedure is more complex than this definition.  However, it is not clear whether Burchfield or Knight had actual knowledge of the complexities of the system.

[8] There is a question as to whether Knight was aware of the Two In/Two Out system.  It is, however, undisputed he was aware of the substantially similar buddy system.

indifference towards prisoner safety. There is at least a jury question as to whether Knight acted with deliberate indifference. It was apparent to any reasonable officer that this was impermissible. Knight is not entitled to qualified immunity on this claim.

The only remaining viable claim is Knight's failure to use the two in/two out or buddy system procedure. All claims against PVFD, Kelly, and Burchfield are dismissed.

The defendants' motion for summary judgement is GRANTED IN PART and DENIED IN PART.

This the 23rd day of March, 2009.

/s/ MICHAEL P. MILLS
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**